### IN THE UNITED STATES DISTRICT COURT
### FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CHRISTOPHER RAD,** | : | |
| **Petitioner** | : | |
| | : | **No. 1:21-cv-00171** |
| **v.** | : | |
| | : | **(Judge Kane)** |
| **CRAIG A. LOWE,** | : | |
| **Respondent** | : | |

## <u>MEMORANDUM</u>

On January 29, 2021, <u>pro se</u> Petitioner Christopher Rad ("Petitioner"), who is currently confined at the Pike County Correctional Facility ("PCCF") in Lords Valley, Pennsylvania, initiated the above-captioned action pursuant to 28 U.S.C. § 2241, challenging the constitutionality of his detention by the United States Department of Homeland Security ("DHS"), Immigration and Customs Enforcement ("ICE").  (Doc. No. 1.)  Following an Order to show cause (Doc. No. 7), Respondent filed a response, contending that Petitioner's detention is lawful (Doc. No. 8).  Petitioner filed a traverse on March 31, 2021.  (Doc. No. 9.)  Accordingly, Petitioner's § 2241 petition is ripe for disposition.

## I.    BACKGROUND

### A.    Facts Regarding Petitioner's Removal Proceedings

Petitioner is a native and citizen of Canada who was admitted to the United States as a lawful permanent resident on August 14, 1976.  (Doc. No. 8-1 at 5, 7.)  On May 14, 2013, following a jury trial in the United States District Court for the District of New Jersey, Petitioner was convicted of conspiracy to commit securities fraud, false header spamming, false registration spamming, and conspiracy to commit unauthorized access spamming.  (<u>Id.</u> at 5, 7.)  He was sentenced to seventy-one (71) months' incarceration.  (<u>Id.</u> at 5, 7.)

On October 16, 2017, ICE issued a Notice to Appear, charging Petitioner with being removable pursuant to section 237(a)(2)(A)(iii) of the Immigration and Nationality Act ("INA") based on his conviction for an aggravated felony in which the loss to the Government exceeded $10,000.00 and his conviction for an aggravated felony conspiracy.  (Id. at 3-5.)  The Notice to Appear was served upon Petitioner at the Federal Correctional Institution Allenwood Low ("FCI Allenwood Low") on November 2, 2017.  (Id. at 3-4.)  On December 11, 2017, an immigration judge entered an interim ruling concluding that Petitioner's conviction met the monetary requirements of section 101(a)(43)(M)(i) of the INA and sustaining ICE"s charge of removability under section 237(a)(2)(A)(iii).  (Id. at 9-13.)  On December 13, 2017, an immigration judge ordered Petitioner removed to Canada.  (Id. at 15.)  Petitioner was released from the custody of the Bureau of Prisons ("BOP") on January 22, 2018 and has been held by ICE ever since.  (Id. at 14.)

Petitioner appealed the removal order to the Board of Immigration Appeals ("BIA").  (Id. at 16.)  On May 8, 2018, the BIA dismissed Petitioner's appeal.  (Id. at 18.)  Petitioner subsequently filed a petition for review with the United States Court of Appeals for the Third Circuit.  (Id.)  On July 5, 2018, the Third Circuit granted Petitioner's motion for a stay of removal, concluded that he had "shown a sufficient likelihood of succeeding on his challenge to the amount of loss under 8 U.S.C. § 1101(a)(43)(M)(i)."  (Id. at 20.)  On August 6, 2018, the Third Circuit granted the Government's motion to remand the matter to the BIA.  (Id. at 21.)  On February 8, 2019, the BIA dismissed Petitioner's appeal.  (Id. at 25-29.)  On February 19, 2019, Petitioner filed a second petition for review with the Third Circuit.  See Rad v. Att'y Gen., No. 19-1404 (3d Cir.).  That same day, the Third Circuit granted Rad a temporary stay of removal pursuant to its Standing Order of August 5, 2015.  See id.  The Third Circuit recently held that

"Petitioner's convictions for conspiring to violate the CAN-SPAM Act[1] necessarily entail deceit, and therefore satisfy the first element of an aggravated felony under 8 U.S.C. § 1101(a)(43)(M)(i)."  See Rad v. Att'y Gen., 983 F.3d 651, 656 (3d Cir. 2020).  The Third Circuit further held that "intended losses, not just actual ones, may meet the loss requirement for Petitioner's conspiracy offenses."  See id.  The Third Circuit vacated the Board of Immigration Appeals ("BIA")'s removal order and remanded for "further consideration of whether [Petitioner's] CAN-SPAM Act convictions reflect over $10,000 in intended losses."  See id. at 671.

On January 21, 2021, Petitioner filed a motion to terminate removal proceedings with the BIA.  (Doc. No. 8-1 at 30-37.)  Respondent represents that DHS opposed Petitioner's motion on March 1, 2021.  (Doc. No. 8 at 4.)  Respondent further represents that the BIA "has not set a briefing schedule for the remand as it is expected to address the remand and Motion to Terminate at the same time given the basis for both is identical."  (Id.)

**B.      Facts Regarding Petitioner's Bond Proceedings**

On July 30, 2018, ICE conducted a review of Petitioner's custody status and decided to continue his detention.  (Doc. No. 8-1 at 18-19.)  On October 16, 2018, an immigration judge denied Petitioner's request for a redetermination of his custody status.  (Id. at 39.)  On February 8, 2019, the BIA dismissed Petitioner's appeal of that decision, concluding that Petitioner was subject to mandatory detention because of his conviction for an aggravated felony.  (Id. at 39-42.)

---

[1] This acronym is commonly used to refer to the Controlling the Assault of Non-Solicited Pornography and Marking Act of 2003.  See Rad v. Lowe, No. 1:21-cv-30, 2021 WL 694803, at *1 n.1 (M.D. Pa. Feb. 23, 2021).

On August 23, 2019, an immigration judge held a hearing on Petitioner's request for a custody redetermination pursuant to <u>Guerrero-Sanchez v. Warden York County Prison</u>, 905 F.3d 208 (3d Cir. 2018).  (Doc. No. 8-1 at 46.)  The immigration judge denied Petitioner's request, concluding that DHS had "met their burden of proving that the respondent is a danger to the community and a flight risk."  (<u>Id.</u>)  Petitioner did not appeal this decision to the BIA.  On March 8, 2021, an immigration judge again denied Petitioner's request for a custody redetermination, noting that he was "[s]ubject to [m]andatory [d]etention and in the alternative danger based on federal conviction with a 35 month sentence."  (<u>Id.</u> at 48.)

### C.    Petitioner's § 2241 Petition

Petitioner filed the instant § 2241 petition on January 29, 2021.  (Doc. No. 1.)  In his § 2241 petition, Petitioner asserts that his continued detention violates the Fifth Amendment's Due Process Clause.  (<u>Id.</u> at 3.)  Petitioner asserts that he "has been in ICE custody now for over three years and there is no significant likelihood of removal in the reasonably foreseeable future."  (<u>Id.</u> at 2.)  Petitioner further asserts that his "removal order improperly ordered [him] removable under § 101(a)(43)(M)i) only for a conspiracy conviction which was clearly improper."  (<u>Id.</u> at 7-8.)  As relief, Petitioner seeks release from custody.  (<u>Id.</u> at 7.)

## II.   LEGAL STANDARD

Under 28 U.S.C. § 2241(c), a prisoner or detainee may receive habeas relief only if he "is in custody in violation of the Constitution or laws or treaties of the United States."  <u>See</u> 28 U.S.C. § 2241(c)(3); <u>see also</u> <u>Maleng v. Cook</u>, 490 U.S. 488, 490 (1989).  Because Petitioner is currently detained within the jurisdiction of this Court and asserts that his continued detention violates due process, this Court has jurisdiction over his § 2241 petition.  <u>See</u> <u>Zadvydas v. Davis</u>, 533 U.S. 678, 699 (2001); <u>Spencer v. Kemna</u>, 523 U.S. 1, 7 (1998).

III.    **DISCUSSION**

Respondent asserts that Petitioner's § 2241 petition should be denied because: (1) his detention remains lawful and is not a violation of the Fifth Amendment's Due Process Clause; and (2) the Court lacks jurisdiction over Petitioner's challenge to his removal order.  (Doc. No. 8 at 5.)  The Court considers these arguments below.

A.    **Challenge to Petitioner's Custody**

In the instant case, the parties do not dispute that Petitioner is currently detained pursuant to 8 U.S.C. § 1226(c), which provides for pre-removal mandatory detention of individuals previously convicted of certain criminal offenses.  See 8 U.S.C. § 1226(c); see also Orozco Arroyo v. Doll, No. 4:19-cv-490, 2019 WL 6173753, at *4-5 (M.D. Pa. Oct. 10, 2019), report and recommendation adopted, 2019 WL 6130483 (M.D. Pa. Nov. 19, 2019) (noting that the Third Circuit's grant of a temporary stay of removal causes an immigration detainee to revert to pre-removal immigration detention status because the order of removal is not administratively final); Carlos A. v. Green, No. 18-741 (SDW), 2018 WL 3492150, at *2 n.1 (D.N.J. July 20, 2018); Chica-Iglesia v. Lowe, No. 1:18-cv-35, 2018 WL 1960438, at *1 (M.D. Pa. Apr. 25, 2018); Gekara v. Lowe, No. 3:17-cv-1693, 2018 WL 837599, at *2 (M.D. Pa. Feb. 12, 2018); Payano v. Lowe, No. 3:16-cv-2029, 2016 WL 6995433, at *2 (M.D. Pa. Nov. 30, 2016); cf. Leslie v. Att'y Gen., 678 F.3d 265, 270 (3d Cir. 2012) (noting that "[8 U.S.C.] § 1321 cannot explain nor authorize detention during a stay of removal pending further judicial review"), abrogated in part on other grounds by Jennings v. Rodriguez, 138 S. Ct. 830 (2018).  An individual detained under § 1226(c) may be released only if the Attorney General decides that release is necessary to protect a witness and that the individual is not a flight risk and does not pose a danger to society.  See id. § 1226(c)(2).  Thus, "section 1226(c) does not give the

Attorney General any authority to release these [individuals] on bond." See Chavez-Alvarez v. Warden York Cty. Prison, 783 F.3d 469, 473 (3d Cir. 2015) (citing Demore v. Kim, 538 U.S. 510, 521 (2003)), abrogated in part on other grounds by Jennings, 138 S. Ct. 830.

Previously, the Third Circuit "read Demore as also recognizing that there are limits to" the Government's authority to detain individuals under § 1226(c) without an opportunity to be considered for bond. See Chavez-Alvarez, 783 F.3d at 473 (citing Diop v. ICE/Homeland Sec., 656 F.3d 221, 233 (3d Cir. 2011); Leslie, 678 F.3d 265). Specifically, the Third Circuit recognized that the Demore Court based its ruling upon the short, fixed, and finite term of pre-removal detention. See id. at 474. Thus, in Chavez-Alvarez, the Third Circuit "read a reasonable time limit into the statute, relying on the Court's earlier decision in Diop, which employed the doctrine of constitutional avoidance to come to this conclusion." See Coello-Udiel v. Doll, No. 3:17-CV-1414, 2018 WL 2198720, at *3 (M.D. Pa. May 14, 2018) (citing Chavez-Alvarez, 783 F.3d at 475; Diop, 656 F.3d at 231). The court noted that the point at which a detained individual's liberties outweigh the interests advanced by detention pursuant under § 1226(c) occurs after the six-month time frame considered in Demore and before the individual has been detained for one year. See Chavez-Alvarez, 783 F.3d at 478.

The Supreme Court, however, has explicitly rejected the practice of reading an implicit time limit into § 1226(c). See Jennings, 138 S. Ct. at 846-47. Nevertheless, Jennings "did not call into question [the] constitutional holding in Diop that detention under § 1226(c) may violate due process if unreasonably long." See Borbot v. Warden Hudson Cty. Corr. Facility, 906 F.3d 274, 278 (3d Cir. 2018). Thus, "even after Jennings, an alien lawfully present but detained under § 1226(c) can still challenge his detention under the Due Process Clause." See German Santos v. Warden Pike Cty. Corr. Facility, 965 F.3d 203, 210 (3d Cir. 2020). When considering whether a

6

petitioner's detention has become unconstitutional, "[t]he most important factor is the duration of detention." See id. at 211.  Moreover, the Court must also consider "all the other circumstances" of detention, including: (1) "whether the detention is likely to continue"; (2) "the reasons for the delay, such as a detainee's request for continuances"; and (3) "whether the alien's conditions of confinement are 'meaningfully different' from criminal punishment."  See id. (quoting Chavez-Alvarez, 783 F.3d at 478).

With respect to the first factor, the duration of detention, the Court notes that Petitioner's detention is already more than three (3) years long.  In German Santos, the Third Circuit concluded that the petitioner's detention of more than two (2) and a half years was unreasonable. See id. at 212.  Moreover, the duration of Petitioner's detention is already longer than the thirty-five (35) month period found unconstitutional by the Third Circuit in Diop.  See Diop, 656 F.3d at 226, 235.  This factor, therefore, weighs strongly in Petitioner's favor.

The Court must next consider whether Petitioner's detention is likely to continue. Respondent asserts that this factor weighs in his favor because "Petitioner's removal proceedings are once again in their final stage."  (Doc. No. 8 at 19.)  Respondent states that "[a]ll indications are that [Petitioner's] proceedings can be resolved in a relatively short period of time by the BIA, which a decision anticipated in months, not years."  (Id.)  The Court disagrees that this factor weighs in favor of Respondent.  As noted supra, Respondent maintains that the BIA has not yet set a briefing schedule for the remand of Petitioner's removal proceedings.  (Doc. No. 8 at 4.) Petitioner will stay detained for as long as it takes the BIA to issue its decision.  Moreover, "if the [BIA] dismisses his appeal, [Petitioner] may [again] petition [the Third Circuit] for review." See German Santos, 965 F.3d at 212.  Therefore, "the likelihood that his detention will continue strongly supports a finding of unreasonableness."  See id.

7

Third, the Court must consider the reasons for the delay in Petitioner's removal proceedings.  Respondent maintains that this factor weights in his favor.  (Doc. No. 8 at 20.)  The Court disagrees and instead concludes that this factor does not favor either party.  Nothing in the record before the Court suggests that the Government has intentionally delayed or unreasonably prolonged Petitioner's removal proceedings.  Respondent asserts that "some portion of the length of Petitioner's detention is attributable to his own delay as he has sought continuances and extensions at the administrative level, and filed countless motions, petitions, and briefs."  (Doc. No. 8 at 20.)  While this is so, Petitioner has not sought any substantial continuances.  Moreover, the Court will not hold Petitioner's "good-faith challenge to his removal against him, even if his appeals or applications for relief have drawn out the proceedings."  See German Santos, 965 F.3d at 211 (citing Chavez-Alvarez, 783 F.3d at 476-77).  "Doing so, and counting this extra time as reasonable, would 'effectively punish [him] for pursuing applicable legal remedies.'"  See id. (quoting Chavez-Alvarez, 783 F.3d at 475).

Finally, the Court must consider whether Petitioner's "conditions of confinement are 'meaningfully different' from criminal punishment."  See id. at 211 (quoting Chavez-Alvarez, 783 F.3d at 478).  "[I]f an alien's civil detention under § 1226(c) looks penal, that tilts the scales toward finding the detention unreasonable.  And as the length of detention grows, so does the weight that [the Court] give[s] this factor."  See id. (citing Chavez-Alvarez, 783 F.3d at 478).  Respondent asserts that Petitioner's conditions of confinement are not punitive because detainees at PCCF "are classified as medium security and housed in either dormitory style housing or cell blocks; however, both housing environments contain day rooms with television and game availability."  (Doc. No. 8 at 20.)  Nevertheless, the Court cannot ignore the fact that Petitioner has "been detained in prison alongside convicted criminals" since January of 2018.  See German

<u>Santos</u>, 965 F.3d at 212-13; <u>see also</u> <u>Clarke v. Doll</u>, 481 F. Supp. 3d 394, 398 (M.D. Pa. 2020) (concluding that the petitioner's detention at the York County Prison looked penal because he was housed alongside convicted individuals). Despite its civil label, Petitioner's detention of over three (3) years at PCCF appears "indistinguishable from criminal punishment." <u>See</u> <u>German Santos</u>, 965 F.3d at 213.

    As of the date of this Memorandum and accompanying Order, Petitioner has been detained for over three (3) years, an unreasonably long time. Respondent, however, maintains that Petitioner is not entitled to habeas relief because during that time, petitioner "has had his custody reviewed three times with the most recent review occurring approximately 72 hours prior to the filing of the instant response." (Doc. No. 8 at 14.) The Third Circuit, however, has held that for bond hearings held for individuals detained pursuant to § 1226(c), "the Government bears the burden of persuasion by clear and convincing evidence. That evidence must be individualized and support a finding that continued detention is needed to prevent [the individual] from fleeing or harming the community." <u>See</u> <u>German Santos</u>, 965 F.3d at 214.

    Upon review of the record, the Court is unable to conclude that Petitioner's March 8, 2021 custody determination hearing comports with due process because it does not appear that the evidence presented by the Government to justify Petitioner's continued detention was "individualized" and supports a conclusion that Petitioner's continued detention is necessary to prevent him "from fleeing or harming the community." <u>See</u> <u>id.</u> Rather, the immigration judge denied Petitioner's request for a custody redetermination, noting that he was subject to mandatory detention and, in the alternative, posed a danger "based on federal conviction with a 35 month sentence." (Doc. No. 8-1 at 48.) As an initial matter, the immigration judge's reference to a 35-month sentence is erroneous because, as noted <u>supra</u>, Petitioner was sentenced

to seventy-one (71) months' incarceration by the United States District Court for the District of New Jersey.  In any event, "[m]echanistic reliance on factors that are common to all § 1226(c) detainees will not suffice."  See Wilkins v. Doll, 1:17-cv-2354, 2018 WL 3388032, at *2 (M.D. Pa. July 12, 2018); see also Singh v. Holder, 638 F.3d 1196, 1205-06 (9th Cir. 2011) (explaining that all alien detainees in § 1226 bond hearings presumably have at least one (1) crime in their past giving rise to their removal orders, and have been ordered removed by an administrative order, and, therefore, the presence of these factors alone does not necessarily warrant denial of bail).  Moreover, it is not that past "convictions are no longer relevant.  Due process is not satisfied, however, by rubberstamp denials based on temporally distant offenses.  The process due even to . . . aliens requires an opportunity for an evaluation of the individual's current threat to the community and his risk of flight."  See Chi Thon Ngo v. I.N.S., 192 F.3d 390, 398 (3d Cir. 1999).  "To presume dangerousness to the community . . . based solely on [Petitioner's] past record does not satisfy due process."  Id. at 398-99.

Like in German Santos, the immigration judge's "sole reliance on Petitioner's past criminal conduct and failure to consider his risk to the community on a current basis 'falls short of the due process the law requires.'"  See Santos v. Lowe, No. 1:18-cv-1553, 2020 WL 4530728, at *3-4 (M.D. Pa. Aug. 6, 2020)  The Court, therefore, concludes that Petitioner's detention pursuant to § 1226(c) has become unreasonably long and that he is entitled to an individualized bond hearing that comports with due process at which the Government must demonstrate, by clear and convincing individualized evidence, that Petitioner's "continued detention is needed to prevent him from fleeing or harming the community."  See German Santos, 965 F.3d at 214.  The Court, therefore, will grant Petitioner's § 2241 petition to the extent that it seeks an individualized bond hearing before an immigration judge.

B.      **Challenge to Petitioner's Removal Order**

Petitioner asserts that his removal order is improper because he cannot be removed under § 101(a)(43)(M)(i) for a conspiracy conviction.  (Doc. No. 1 at 7.)  Petitioner also asserts that the doctrine of res judicata bars ICE from filing a second Notice to Appear "for the same conduct" alleged in the first Notice to Appear.  (Id. at 8.)  However, "petitions for review filed with the court of appeals [are] the 'sole and exclusive means for judicial review of' most orders of removal, including the order of removal at issue here."  See Jordon v. Att'y Gen. of U.S., 434 F.3d 320, 326 (3d Cir. 2005).  As the Third Circuit pointed out, the REAL ID Act "expressly eliminated district courts' habeas jurisdiction over removal orders."  See id.  This Court, therefore, lacks jurisdiction over Petitioner's challenge to the validity of his removal order.  Accordingly, Petitioner's challenge to his removal order will be dismissed.

## IV.    CONCLUSION

For the foregoing reasons, the Court will grant in part and dismiss in part Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.  (Doc. No. 1.)  The § 2241 petition will be granted to the extent that Respondent will be directed to afford Petitioner an individualized bond hearing that comports with due process, under the standards set forth in German Santos, within thirty (30) days.  The § 2241 petition will be dismissed for lack of jurisdiction to the extent Petitioner challenges his removal order.  An appropriate Order follows.